# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

PUBLIC SERVICE COMPANY OF )
OKLAHOMA, an Oklahoma corporation, )
                    Plaintiff, )
     )
vs. )   NO. CIV-10-651-D
     )
A PLUS, INC., an Oklahoma corporation, )
a/k/a JARVIS FURNITURE, a/k/a A PLUS )
SPRAYING; RANDEL R. STONE, an )
individual; KIMBERLY A. STONE, an )
individual; PATRICIA ANN WILLIAMS, an )
individual; JERRY DUAYNE WILLIAMS, )
an individual; and FIRST STATE BANK OF )
ANADARKO, )
                    Defendants. )

## ORDER

Before the Court is the motion [Doc. No. 33] of Defendants Patricia Ann Williams and Jerry Duayne Williams ("Mr. and Mrs. Williams") to quash [Doc. No. 33] subpoenas duces tecum issued by Plaintiff and seeking documents from four non-parties: 1) Gold River Casino ("Gold River"); 2) Apache Corporation ("Apache"); 3) Sanders, Welch and Wallis[1]; and 4) Jeremy Hall ("Hall"). At the time the motion was filed, Mr. and Mrs. Williams were not parties to this litigation; however, Plaintiff subsequently filed an Amended Complaint adding them as defendants.

Mr. and Mrs. Williams argue the subpoenas seek production of their personal and private information which is not relevant to Plaintiff's claims in this lawsuit. Plaintiff argues the

---

[1] In its response to the motion, Plaintiff states it has withdrawn the subpoena issued to Sanders, Welch and Wallis. Accordingly, the Court need not address that subpoena in this Order.

subpoenas seek documents reflecting financial transactions which are relevant and likely to lead to the discovery of evidence admissible at trial.

Background:

Plaintiff contends that, in 2007 and 2008, Defendants Randel Stone and Kimberly Stone (the "Stones") submitted fraudulent invoices to Plaintiff for services rendered or items sold by Defendant A Plus Inc. ("A Plus"), also known as Jarvis Furniture or A Plus Spraying. Based on these invoices, Plaintiff paid over $500,000.00 to Defendants for services or purchases for its power plant near Anadarko, Oklahoma. Plaintiff alleges the invoices were fraudulent because they reflected charges for services which were not performed and/or purchases for items which were not received. Plaintiff alleges the Stones owned A Plus, which subsequently purchased Jarvis Furniture; the checks it tendered for amounts shown on the allegedly fraudulent invoices were endorsed by Randel and/or Kimberly Stone; it contends some of the checks were cashed or converted into cashier's checks, and some of the proceeds were transferred to Mr. and Mrs. Williams, who are Kimberly Stone's parents.

Plaintiff's sole claim against Mr. and Mrs. Williams[2] is based on unjust enrichment; it alleges they benefitted from the funds fraudulently obtained by A Plus and the Stones. According to Plaintiff, it has determined in discovery that Mrs. Stone used one of Plaintiff's checks to purchase cashier's checks, and two of those cashier's checks were payable to Mrs. Williams. *See* Plaintiff's Exhibit 2. Plaintiff contends that Mr. and Mrs. Williams also received additional funds derived from its payment of the allegedly fraudulent invoices.

Plaintiff issued the challenged subpoenas duces tecum after it deposed Mrs. Williams, who

---

[2]Plaintiff asserts several claims against A Plus and the Stones, as well as a claim against First State; Mr. and Mrs. Williams are not named as defendants on the other claims.

was questioned about sources of funds received by Mr. and Mrs. Williams during the time period relevant to Plaintiff's claims. Mrs. Williams testified that she and Mr. Williams received funds during the relevant period from Gold River, Apache and Hall. She testified Mr. Williams received compensation from Gold River, where he was employed for approximately five years, that funds were received from Apache after it drilled a well or wells on the Williamses' property, and that funds were received from Hall for a lease allowing him to raise cattle on their land.

According to Plaintiff, it previously obtained Mr. and Mrs. Williams's bank records showing deposits during the relevant time period, and some deposits occurred near the dates of payments by Plaintiff to the Stones. The deposit records reflect that some deposit slips contain notations identifying the source of the funds deposited, while others do not. *See* Plaintiff's brief at pp. 3-4 and Exhibit 4. Some of the deposit slips identify Apache as the source of funds, but no entries identify Gold River or Hall. Several deposits have no identified source, and some of those reflect deposits exceeding $5,000.00. Mrs. Williams was unable to explain the source of those deposits. Plaintiff seeks to obtain documents from the three subpoena recipients to determine whether the unidentified deposits consist of funds provided to Mr. and Mrs. Williams from Gold River, Apache or Hall.

Mr. and Mrs. Williams's motion to quash the subpoenas argues that the information requested is not relevant and constitutes private and confidential material.

Standards governing motions to quash:

Pursuant to Fed. R. Civ. P. 45(c)(3), an issuing court, upon timely motion, must quash or modify a subpoena that falls into certain categories specified in the Rule, including a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies"

3

or a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv).

Plaintiff expressly does not challenge Mr. and Mrs. Williams's standing to challenge the subpoenas on these bases. However, decisions applying Rule 45(c)(3)(A) require a court to consider the movants' standing even if it is not disputed. *Hood v. Fiberweb, Inc.*, 2010 WL 4102219, at * 1 (M. D. Tenn. Oct. 18, 2010) (unpublished opinion) ("Although the defendant has not raised the issue, as a general rule, a party does not have standing to move to quash a subpoena issued to a third party, absent a claim of privilege."); *Herff Jones, Inc. v. Oklahoma Graduate Services, Inc.*, 2007 WL 2344705, at *3, n 4 (W. D. Okla. Aug. 15, 2007) (unpublished opinion); *Arias-Zeballos v. Tan*, 2007 WL 210112, at *1 (S.D.N.Y. Jan.25,2007) (unpublished opinion);*Transcor, Inc. v. Furney Charters, Inc.,* 212 F. R. D. 588, 590 (D. Kan. 2003). Accordingly, the Court will first determine whether Mr. and Mrs. Williams have standing to contest the subpoenas.

As Mr. and Mrs. Williams acknowledge, the general rule is that only the person to whom the subpoena is directed has standing to object to its issuance. *See, e.g., Shirazi v. Childtime Learning Center, Inc.*, 2008 WL 4792694, at *1 (W. D. Okla. Oct. 31, 2008) (unpublished opinion); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F. R. D. 588, 590 (D. Kan. 2003); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). An exception to that rule occurs where the challenging party asserts a personal right or privilege with respect to the materials subpoenaed. *Shirazi,* 2008 WL 4792694, at *1; *Brown*, 595 F.2d at 967; *see also* Charles Allen Wright & Arthur R. Miller, 9A *Federal Practice and Procedure* § 2459 (3d ed. 2008).

4

To satisfy the standing requirement on this basis, a conclusory assertion that the subject documents "are private, confidential, and proprietary" is insufficient; instead, the challenging party must specifically identify the personal right or privilege on which he relies. *Hitachi Medical Systems America, Inc. v. Branch*, 2010 WL 3222424, at *2 (N.D. Ohio Aug. 13, 2010) (unpublished opinion) ; *Streck, Inc.* v. *Research & Diagnostic Systems, Inc*., 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) (unpublished opinion); *Windsor v. Martindale*, 175 F. R. D. 665, 668 (D. Colo. 1997).

The court decisions do not define what constitutes a "personal right" for this purpose, but have applied the exception to specific factual circumstances. For example, the Tenth Circuit has held that a plaintiff has a personal right sufficient to confer standing to challenge a subpoena seeking her employment records. *Shirazi*, 2008 WL 4792694, at *1. The Tenth Circuit has also recognized that certain constitutional rights confer standing to challenge subpoenas to third parties. *First Natl. Bank v. United States*, 701 F.2d 115, 117-18 (10th Cir. 1983). Other courts have held that individuals whose banking records are subpoenaed "have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Arias-Zeballos v. Tan*, 2007 WL 210112, at *1 ( S. D. N. Y. Jan. 25, 2007) (unpublished opinion) (citations omitted); *Transcor, Inc.,* 212 F. R. D. at 591; *Catskill Development, LLC v. Park Place Entertainment*, 206 F. R. D. 78, 93 (S.D.N.Y. 2002). Courts have also found a privacy right sufficient to confer standing where a subpoena seeks a party's psychiatric or mental health records. *Fenstermacher v. Moreno*, 2010 WL 5071042, at * 3 (E. D. Cal. Dec. 7, 2010) (unpublished opinion) (quoting *Jacobs v. Connecticut Community Technical Colleges*, 258 F. R. D. 192, 195 (D. Conn. 2009)).

5

Application:

In this case, Mr. and Mrs. Williams argue the subpoenas impact their personal rights because the documents sought reflect "personal, private and confidential financial records of a non-party." Motion at p. 5. They also contend the information can be obtained by other means. *Id.*

Whether Mr. and Mrs. Williams have standing to challenge the subpoenas requires examining the specific items subpoenaed to determine if the documents are likely to contain the private information necessary to provide them with standing to object to the subpoenas.

In the Gold River subpoena, Plaintiff seeks production of records related to the employment of Mr. Williams, specifically: "payroll records...payroll reports, payroll remittances, or payroll status forms." Subpoena, Williams Exhibit A to motion. In addition, the subpoena seeks documents reflecting information and records "pertaining to contract services, including but not limited to, 1099 forms, contract agreements, copies of checks made payable to Jerry Duayne Williams, and descriptions of cash payments" made to Mr. Williams. Also subpoenaed are records of any payments made to Mr. Williams in any form, listing the amount and date of any cash payment. *Id.* The subpoena also seeks documents reflecting "cash advances against Jerry Duayne Williams's available income," and "any payments made on his behalf." *Id.*

Although the Tenth Circuit in *Shirazi* determined that an employee has a privacy right in his personnel records sufficient to confer standing to challenge a third-party subpoena seeking those records, the subpoena in *Shirazi* sought the individual's entire personnel files from former and current employers. *Shirazi*, 2008 WL 4792694, at *1. The court found such information constituted a privacy right sufficient to confer standing upon the employee whose records were

6

subpoenaed from third parties. *Id.* (citing *Richards v. Convergys Corp.*, 2007 WL 474012 (D. Utah Feb.7, 2007) (unpublished opinion). Having recognized the employee's standing to challenge the subpoena, the court considered whether the entire files were discoverable under Fed. R. Civ. P. 26(b)(1); it then determined that portions of those records were relevant and properly discoverable. *Id.* at *2.

The documents subpoenaed in this case differ from those in *Shirazi*, as Plaintiff does not seek Mr. Williams's entire personnel file; in fact, the subpoena duces tecum does not mention his personnel file. Its request is limited only to documents reflecting compensation paid to Mr. Williams by Gold River. Mr. and Mrs. Williams submit no authority in which a court has found such information sufficient to constitute the "privacy right" necessary to authorize standing.

Even if Mr. and Mrs. Williams have standing to move to quash the Gold River subpoena, the Court finds the requested documents are discoverable under Rule 26(b)(1), as they constitute nonprivileged matter that is relevant to a claim asserted by Plaintiff; the discovery need not be admissible so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

One of Plaintiff's claims in this case is that Mr. and Mrs. Williams were unjustly enriched by receiving funds paid by Plaintiff to the Stones and/or A Plus on the basis of allegedly fraudulent invoices. There is evidence that some funds paid by Plaintiff were used for cashiers checks which the Stones transferred to Mr. and Mrs. Williams. Mrs. Williams testified that some of the funds deposited in the Williamses' bank account without a notation of the source could have been payroll checks or other compensation derived from Mr. Williams's employment at Gold River. According to Plaintiff, Mrs. Williams could not identify those deposits. As Plaintiff suggests,

Gold River's records should reflect the dates and amounts of any such payments made to Mr. Williams. The dates and amounts of such payments, during the relevant time period, are within the scope of proper discovery.

The subpoena to Apache requests documents reflecting leases or agreements with Mr. and Mrs. Williams for specific property designated by legal description; it also seeks copies of correspondence regarding the lease(s) or mineral interests related to the property. Williams Exhibit 4. In addition, the subpoena seeks documents reflecting "any exchange of money," regardless of the form, between Apache and the Williamses or any party on their behalf, as well as documents related to royalty payments made to them. *Id.* The subpoena also seeks "all documents reflecting or concerning any business relationship you have or may have had" with the Williamses. *Id.*

Mr. and Mrs. Williams offer no authority to support their contention that the requested records constitute private information sufficient to confer standing to challenge the subpoena. Even if they had done so, however, the Court would proceed to determine the relevance of those documents. While the deposit records in the Williamses' bank account reflect some deposits of funds derived from Apache, the deposits reflecting no notation of the source of the deposited funds could reflect additional Apache payments. If not, then the absence of such payments could arguably support Plaintiff's claim that the unidentified funds were received from the Stones.

The Hall subpoena seeks documents concerning any agreements with Mr. and Mrs. Williams, as well as those reflecting any "exchange of money," regardless of form, between Hall and the Williamses. Williams Exhibit 6. In addition, it seeks documents reflecting any gifts made by Hall to Mr. or Mrs. Williams, and documents "reflecting or concerning any business

8

relationship" Hall has or may have had with the Williamses. *Id.*

Again, Mr. and Mrs. Williams fail to specify how the requested information impacts their rights to privacy, nor do they submit any authority in which a court has found records of lease payments sufficient to trigger a privacy right supporting standing. Even if they had done so, however, the Court would find the documents subpoenaed properly discoverable for the same reasons as discussed with respect to the Gold River and Apache subpoenas.

Mr. and Mrs. Williams also argue the subpoenas duces tecum should be quashed because they are unduly burdensome to the subpoenaed parties; they contend the information sought can readily be obtained from other sources, including Mr. Williams. To the extent their motion is based on that contention, it must be denied because they lack standing to challenge the subpoenas on that basis. Even if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on the grounds that the information imposes an undue burden on the subpoenaed party. *Keybank Nattional Ass'n v. Perkins Rowe Associates, L. L. C.*, 2011 WL 90108, at *2 (M. D. La. Jan. 11, 2011) (unpublished opinion) (defendants had standing to challenge third-party subpoenas seeking the defendants' private bank records, but lacked standing to challenge other third-party subpoenas on grounds of relevance or undue burden to the subpoenaed non-party); *Streck,* 2009 WL 1562851, at *3 (movant lacked standing to contest third-party subpoenas on grounds of undue burden or inconvenience). The subpoenaed entity "is the only one entitled to challenge the subpoena under Fed. R. Civ. P. 45(c)(3),"unless a showing is made that [plaintiff] has a personal right to be protected or that the documents are subject to a privilege.'" *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F. R. D. 620, 635 ( D. Kan. 1999) (quoting *Smith v. Midland Brake, Inc.*, 162 F.

9

R. D. 683, 685 (D. Kan. 1995)).

Conclusion:

For the foregoing reasons, the Court concludes that Mr. and Mrs. Williams lack standing to challenge the subpoenas duces tecum pursuant to Fed. R. Civ. P. 45(c)(3)(A). Even if standing were satisfied, the documents sought are properly discoverable pursuant to Fed. R. Civ. P. 26. Accordingly, the motion to quash [Doc. No. 33] is DENIED.

IT IS SO ORDERED this 16th day of February, 2011.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE