# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| PUBLIC SERVICE COMPANY OF OKLAHOMA, an Oklahoma corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) NO. CIV-10-651-D ) |
| A PLUS, INC., an Oklahoma corporation, a/k/a JARVIS FURNITURE, a/k/a A PLUS SPRAYING; RANDEL R. STONE, an individual; KIMBERLY A. STONE, an individual; PATRICIA ANN WILLIAMS, an individual; JERRY DUAYNE WILLIAMS, an individual; and FIRST STATE BANK OF ANADARKO, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **ORDER**

Before the Court is the Motion to Dismiss [Doc. No. 55] of Defendant First State Bank of Anadarko ("the Bank"). Pursuant to Fed. R. Civ. P. 12(b)(6), the Bank contends the factual allegations in the Amended Complaint fail to state a claim upon which relief may be granted against the Bank. Plaintiff Public Service Company of Oklahoma ("PSO") timely responded to the motion, and the Bank filed a reply.

Background:

PSO brought this action to recover sums it paid to A Plus, Inc. a/k/a Jarvis Furniture a/k/a A Plus Spraying (collectively, "A Plus") pursuant to invoices submitted to PSO by A Plus and/or its owners, defendants Randel R. Stone and Kimberly A. Stone (the "Stones"). PSO alleges the invoices were false or fraudulent because they reflected work which was never performed by A Plus.

According to PSO, its payments based on the allegedly false invoices totaled nearly $600,000.00 during the time period of 2006 through 2009.

In the Amended Complaint, PSO named additional defendants, including the Bank.[1] A Plus and the Stones maintained accounts at the Bank during the relevant time period. According to PSO, it paid the amounts reflected on the allegedly fraudulent invoices by checks made payable to A Plus. PSO further alleges the Stones, acting on behalf of A Plus, did not deposit these checks in the A Plus account at the Bank; instead, they cashed the checks, asked the Bank to convert them into cashier's checks made payable to the Stones or a third party, or deposited the checks in the Stones' personal account at the Bank.

PSO's claims against the Bank are set forth in its Sixth Cause of Action. PSO asserts claims of negligence and gross negligence against the Bank, alleging it breached a duty to PSO arising under common law or statute. According to PSO, the Bank was negligent in allowing the Stones to engage in the foregoing banking transactions and in failing to report those transactions "as required by law." Amended Complaint, ¶¶ 66-67. PSO alleges the Bank had a duty to accept the checks only for deposit into the A Plus account, and it was negligent in allowing the Stones to obtain cash or cashier's checks and/or to deposit the checks into their personal account. PSO also alleges the Bank failed to generate "anti-structuring" reports regarding these transactions, and that it was required to do so by law. Amended Complaint ¶¶ 33-34, 17-18. PSO alleges the Bank's negligent conduct resulted in injury to PSO.

---

[1]PSO also names Patricia Ann Williams and Jerry Duane Williams as additional defendants in the Amended Complaint. The claims asserted against them are not at issue in this motion.

The Bank seeks dismissal of these claims pursuant to Fed. R. Civ. P. 12(b)(6). It argues the common law negligence claim against it must be dismissed because the Bank does not, as a matter of law, have a duty to PSO on which an Oklahoma common law negligence claim can be based. The Bank also argues PSO cannot base its negligence claim on the Bank's alleged violation of statutory bank reporting requirements because there is no private cause of action based on those requirements. PSO argues the Bank owed it a duty under both theories, asking the Court to find that Oklahoma would recognize a common law cause of action in negligence under these circumstances. Alternatively, PSO contends the Bank is not entitled to dismissal because PSO has also alleged a claim against the Bank based on the contention that it aided and abetted the Stones and A Plus in committing fraud. PSO also seeks leave to amend to cure the deficiencies in the Amended Complaint; if the Court finds it has not properly alleged an aiding and abetting claim, it seeks leave to add that claim in an amended complaint.

Standards applicable to Rule 12(b)(6):

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion). To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt*, 276 F. App'x at 846 (quoting *Robbins*, 519 F. 3d at 1247.) "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. Thus, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570;

3

*Robbins*, 519 F. 3d at 1247. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct. 1937, 1951 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* The Court need not accept as true the assertions in a complaint which contain only "labels and conclusions" or "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Ashcroft,* 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 554-555).

In its response to the Bank's motion, PSO devotes most of its argument to a recitation of its allegations against A Plus and the Stones, including a discussion of evidence it claims to have obtained in discovery. Those arguments are not responsive to the Bank's motion because material outside the pleadings is not properly considered in connection with a Rule 12(b)(6) motion.[2] "In deciding a Rule 12(b)(6) motion, a federal court generally "should not look beyond the confines of the complaint itself." *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002) (citing *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 960 (10th Cir.2001), *rev'd on other grounds,* 537 U.S. 79 (2002)). The question presented by the Bank's motion is not whether PSO has stated

---

[2]The Court may, in some cases, consider material outside the pleadings, e.g., where a plaintiff relies on such material in support of the allegations and/or incorporates such material by reference in a complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). Those exceptions are inapplicable here.

4

a claim for relief against the Stones and/or A Plus or whether PSO can present evidence that the Stones and/or A Plus presented false invoices to PSO. The sole issue presented by the Bank's motion is whether PSO has alleged sufficient facts in the Amended Complaint to state a plausible claim for relief based on the Bank's purported negligence. Accordingly, the Court will confine its ruling to that issue.

Application:

Common law negligence:

To state a claim for relief based on negligence under Oklahoma common law, a plaintiff must plead facts sufficient to show (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach of its duty was the proximate cause of injury to the plaintiff. *Consolidated Grain & Barge Co. v. Structural Systems, Inc.,* 212 P. 3d 1168, 1171 n. 8 (Okla. 2009). The threshold question in a negligence action is whether the defendant owes the plaintiff a duty of care. *First Natl. Bank in Durant v. Honey Creek Entertainment Corp.*, 54 P. 3d 100, 105 (Okla. 2002). "'It is an established rule of law that there can be no actionable negligence where the defendant has breached no duty owed to the plaintiff.'" *Henry v. Merck and Co., Inc.*, 877 F. 2d 1489, 1492 (10th Cir. 1989) (citing *Nicholson v. Tacker*, 512 P. 2d 156, 158 (Okla. 1973)). Even if a defendant "has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable." *Id.*

"The issue of the existence of a duty is a question of law for the court." *Jennings v. Badgett*, 230 P. 3d 861, 865 (Okla. 2010). A court determines the existence of a duty by examining "whether the defendant stands in such a relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Gaines-Tabb v. ICI Explosives*

5

*USA, Inc.,* 995 F. Supp. 1304, 1316 (W. D. Okla. 1996), *aff'd*, 160 F. 3d 613 (10th Cir. 1998); *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P. 2d 1318, 1320-21 (Okla. 1996).

In this case, the Bank argues PSO has not pled facts sufficient to show the Bank owed PSO any legal duty on which a common law negligence claim could be based. As the Bank points out, PSO does not allege that it was a depositor or customer of the Bank or that it had any legal relationship with the Bank; in its response, PSO concedes that it cannot do so. Further, the Court notes that no facts are alleged which suggests PSO relied upon the Bank for any action or information during the course of conduct complained of here. As the Bank also argues, Oklahoma courts have never recognized a duty owed by a state bank to one who is not its depositor under circumstances similar to those in the present case. Thus, the Bank contends that, even if the facts alleged are taken as true, they cannot form the basis for a plausible claim for relief based on common law negligence.

In its response, PSO concedes no Oklahoma court has held that a state bank owes a duty to a third-party non-bank customer under these circumstances, and it does not dispute that it had no business relationship with the Bank. The parties' briefs suggest that the Oklahoma courts have not been presented with the question whether a bank owes a duty to a third-party non-customer which may support a cognizable common law negligence claim. Recognizing the absence of authority to support such a claim, PSO argues that Oklahoma *should* recognize such a duty and asks this Court to hold the Oklahoma Supreme Court would do so if presented with the question. The Bank argues that Oklahoma decisions regarding negligence claims do not support that argument; further, the Bank argues other jurisdictions addressing the question have rejected claims that a bank owes such a duty to a non-customer. When assessing the sufficiency of pleadings based on a claim

governed by state law, the Court must "ascertain and apply" the state's law. *Wade v. EMCASCO Ins. Co.*, 483 F. 3d 657, 665 (10th Cir. 2007). In doing so, the Court must "follow the most recent decisions of the state's highest court." *Coll v. First American Title Ins. Co.,* __ F. 3d __, 2011 WL 1549233, at *5 (10th Cir. April 26, 2011) (for publication) (citations omitted). Where no controlling state decision exists, the Court "must attempt to predict what the state's highest court would do." *Id.* To do so, the Court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Coll*, __ F.3d at __, 2011 WL 1549233, at *5 (citing *Wade*, 483 F. 3d at 665-66). The Court will follow that procedure in this case by considering Oklahoma's decisions regarding common law negligence; because the parties agree there is no direct Oklahoma authority on the question raised, the Court will also consider other jurisdictions' decisions regarding the existence of a bank's duty to a non-customer in order to determine the weight of authority on that question.

Oklahoma follows the generally accepted principle that a defendant does not have " a duty to anticipate and prevent the intentional or criminal acts of a third party" which resulted in harm to the plaintiff. *J. S. v. Harris*, 227 P. 3d 1089, 1092 (Okla. Civ. App. 2009). Oklahoma also recognizes an exception to that rule where certain "special circumstances" exist. *Id.* The types of special circumstances recognized in Oklahoma are those in which: 1) the actor/defendant has a special responsibility toward the person who suffers the harm; or 2) the actor's "'own *affirmative* act has created or exposed the other to a recognizable high degree of risk of harm" caused by the misconduct of another, and that risk would have been taken into account by a reasonable person.

7

*Id.* (quoting *Joyce v. M & M Gas Co.,* 672 P. 2d 1172, 1174 (Okla. 1983)) (emphasis in original). The first circumstance arises where the defendant and the plaintiff had a pre-existing relationship, and the specific risk to the plaintiff was reasonably foreseeable to the defendant. *Gaines-Tabb,* 995 F. Supp. at 1317; *Henry v. Merck and Co., Inc.,* 877 F. 2d 1489, 1492-93 (10th Cir. 1989) (applying Oklahoma law). In that situation, the foreseeability of harm to the plaintiff is the most important consideration. *J. S.,* 227 P. 3d at 1093. The second circumstance arises where the defendant's affirmative act created or exposed the plaintiff to a recognizable high degree of risk of harm from the reasonably foreseeable conduct of third persons. *Gaines-Tabb*, 995 F. Supp. at 1317; *Joyce*, 672 P. 2d at 1174.

In this case, PSO's allegations cannot support the existence of the first category of "special circumstances" which would warrant imposition of a duty upon the Bank because PSO concedes that it had no pre-existing relationship with the Bank. Construing its argument most liberally in its favor, PSO apparently relies on the second category which requires a showing that the Bank's affirmative acts exposed PSO to a "recognizable high degree of risk of harm" to PSO based on the reasonably foreseeable conduct of the Stones. *Joyce*, 672 P. 2d at 1174.

Although the "special relationship" analysis of a legal duty has not been applied in Oklahoma to a claim against a bank brought by one who is not its customer, PSO urges the Court to find Oklahoma would adopt the view expressed in an Alabama decision holding that a bank has a fiduciary relationship with the general public, *Security Trust & Savings Bank v. Marion County Banking Co.*, 253 So. 2d 17 (Ala. 1971). As the Bank points out, however, *Security Trust* did not involve a negligence claim by a non-customer against a bank; instead the court addressed the public policy reasoning underlying special Alabama legislation prohibiting state banks from creating

8

branches. *Id.*, at 21. Thus, the Alabama court was not faced with the question raised by PSO's claim against the Bank. Even if the Alabama court had held that a bank has a fiduciary responsibility to non-customers on which a negligence claim may be based, however, the Oklahoma Supreme Court has expressly rejected a contention that a bank has a fiduciary relationship with a non-customer. *First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 859 P. 2d 502, 510 (Okla. 1993) (court rejected a guarantor's claim that the bank owed it a fiduciary obligation, noting the guarantor was not a bank customer or depositor). Accordingly, the Court finds that, contrary to PSO's contention, the Oklahoma Supreme Court would not accept its argument that the Bank owed it a fiduciary duty.

*Kissee* is helpful to the Court because it suggests the Oklahoma Supreme Court has limited the legal duties of banks to non-customers. However, it does not address the specific question raised by PSO's negligence claim.[3] Accordingly, the Court has examined decisions in other jurisdictions which have considered whether a bank owes a legal duty to non-customers on which a negligence claim may be based. Based on that review, the Court concludes the majority of courts considering the question have held that a bank does not have a duty to third-party non-customers, even if a bank customer engages in misconduct harmful to the non-customer.

In *Eisenberg v. Wachovia Bank, N. A.,* 301 F. 3d 220 (4th Cir. 2002), the Fourth Circuit, applying North Carolina law, expressly held a bank does not have a duty of care to a non-customer on which a negligence claim can be based. In reaching that conclusion, the Fourth Circuit examined decisions from other jurisdictions, and concluded most reject the existence of such a duty:

---

[3]Under certain circumstances, not present here, banks have been held to owe duties of disclosure to non-customers. *See, e.g., MSA Tubular Products, Incorporated v. First Bank and Trust Company, Yale, Oklahoma*, 869 F.2d 1422 (10th Cir. 1989) (bank providing account information had duty to do so accurately).

9

> Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship. *See Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812, 815 (Colo.Ct.App.1999); *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I.1998); *Miller–Rogaska, Inc. v. Bank One*, 931 S.W.2d 655, 664 (Tex.App.1996); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 56 Cal.Rptr.2d 756, 760–63 (1996); *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 106 Mich.App. 290, 307 N.W.2d 761, 764–65 (1981); *Pa. Nat'l Turf Club, Inc. v. Bank of W. Jersey*, 158 N.J.Super. 196, 385 A.2d 932, 936 (1978); *Gesell v. First Nat'l City Bank*, 24 A.D.2d 424, 260 N.Y.S.2d 581, 581–82 (1965).

*Eisenberg,* 301 F. 3d at 225. *See also Zabka v. Bank of America Corp.,* 127 P. 3d 722, 723-24 (Wash. Civ. App. 2005) ("absent a direct relationship or statutory duty, a bank does not owe a duty to third party noncustomers");*Commerce Bank/Pennsylvania v. First Union Nat'l Bank,* 911 A. 2d 133 (Pa. 2006).

In *Commerce Bank*, the court explained the rationale for rejecting the existence of a bank duty to non-customers, even where the bank was aware of a customer's suspicious conduct; the court held a bank had no duty to take action against its depositor to protect another bank from possible "check kiting" by the depositor. In doing so, the court applied the rule, also followed in Oklahoma, that the existence of a legal duty must be predicated upon a relationship that exists between the parties. The court found the two banks at issue had no relationship warranting the imposition of a duty sufficient to support a negligence claim. *Id.* at 138. The Pennsylvania Superior Court expressly declined "to make banks the guarantors of their clients' trustworthiness." *Id.* According to the court, imposing a duty on a bank in such circumstances "would inevitably force banks to close or restrict the clients' accounts on the least degree of suspicion...in order to avoid unspecified liability" to third parties; thus, imposing such a duty was found contrary to public policy. *Commerce Bank*, 911 A. 2d at 139-40.

More specifically applicable to PSO's claims in this case are decisions expressly holding a bank does not have a duty to third-party non-customers to detect and prevent a bank customer's fraudulent conduct. *Grad v. Associated Bank, N.A.,* 2011 WL 2184335 (Wis. Civ. App. June 7, 2011) (unpublished opinion) (citing *Hoida, Inc. v. M & I Midstate Bank*, 717 N. W. 2d 17 (Wis. 2006) and *Commercial Discount Corp. v. Milwaukee W. Bank*, 214 N. W. 2d 33 (Wis. 1974)); *McCallum v. Rizzo*, 1995 WL 1146812 (Mass. Super. Ct. Oct. 13, 1995) (unpublished opinion). In *McCallum*, the Massachusetts court held "a bank's failure to investigate a customer's suspicious activity...does not give rise to liability to the third party who is injured by the customer's fraud." *Id.*, at *2. The court held:

> The mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers. To the contrary, the duty is owed exclusively to the customer, not to the persons with whom the customer has dealings.

*McCallum,* 1995 WL 1146812, at *2. Noting the question was one of first impression in Massachusetts, the court examined other courts' decisions, and concluded "there is an abundance of precedent from other jurisdictions holding that a bank owes no duty of care to third parties who are not bank customers." *Id.* (citing *Guidry v. Bank of LaPlace*, 740 F.Supp. 1208, 1218-19 (E.D. La.1990), *rev'd in part*, 954 F.2d 278 (5th Cir.1992); *E.F. Hutton Mortgage Co. v. Equitable Bank, N.A.*, 678 F.Supp. 567, 579 (D.Md. 1988); *Chicago Title Insurance Co. v. California Canadian Bank*, 174 Cal. App.3d 1142, 1158-59, 220 Cal. Rptr. 507 (1986); *Portage Aluminum Co. v. Kentwood National Bank*, 307 N.W.2d 761, 764-65 (Mich. 1981); *Pennsylvania National Turf Club Inc. v. Bank of West Jersey*, 385 A.2d 932, 936 (N.J. 1978)).

In a recent decision, the United States District Court for the District of Massachusetts considered whether Connecticut courts would hold a bank has a duty to third-party non-customers.

11

*VIP Mortgage Corp. v. Bank of America, N. A.*, __ F. Supp. 2d __, 2011 WL 573601, at *6 (D. Mass. Feb. 11, 2011) (for publication). The Court determined the question was one of first impression in Connecticut. Examining decisions from other jurisdictions, the Court found an overwhelming majority rejected the existence of such a duty; it concluded there is a "now *almost universal rule* that banks do not owe a common law duty of care to third-party non-customers." *Id.* (emphasis added).

In this case, PSO has not presented persuasive authority suggesting that the Oklahoma Supreme Court would disagree with the recognized majority view. It argues Oklahoma would extend a duty to the bank in this case because it has previously found defendants have a duty to third parties in other circumstances. *See, e.g., Brigance v. Velvet Dove Restaurant, Inc.*, 725 P. 2d 300 (Okla. 1986). In *Brigance*, the Oklahoma Supreme Court recognized a duty of a vendor to withhold service of alcohol to a noticeably inebriated customer; in doing so, it relied on strong public policy concerns designed to reduce incidents of drunk driving resulting in injuries and fatalities. *Brigance,*725 P. 2d at 304.

PSO's argument is not persuasive. The facts presented by *Brigance* are clearly distinguishable from those in this case. Furthermore, the jurisdictions rejecting imposition of a duty by a bank to non-customers have found no public policy supports the imposition of such a duty; in fact, several decisions have noted public policy would not be served thereby. *See, e.g., Commerce Bank/Pennsylvania,* 911 A. 2d at 139-140.

Having fully considered the issue, the Court concludes that, if faced with the question, the Oklahoma Supreme Court would join the majority of other jurisdictions and hold that a bank does not have a duty to a third-party non-customer on which a common law negligence claim can be

based. Accordingly, the Court concludes that PSO has failed to allege facts sufficient to state a plausible claim for relief based on Oklahoma's common law of negligence and gross negligence because PSO cannot, as matter of law, plead facts sufficient to satisfy the essential element of a duty on the part of the Bank. The Bank's motion to dismiss the common law negligence claim is granted.

<u>Violation of statutory requirements</u>:

In the Sixth Cause of Action, PSO also seeks to hold the Bank liable on a negligence theory based on the Bank's alleged failure to report the Stones' transactions "as required by law." Amended Complaint at ¶ 66. Although PSO fails to identify the law on which it relies, it refers in other portions of the Amended Complaint to "anti-structuring transaction reports," which it contends the Bank should have generated with regard to the Stones' transactions. *Id.* at ¶ 34. In its motion, the Bank argues the only law that could be implicated is the Bank Secrecy Act ("Act"), 31 U. S. C. § 5318. PSO's response to the Motion establishes that the Act is the law on which it relies. Accordingly, construing the allegations most liberally in PSO's favor, the Court will construe the allegations as based on the Act and accompanying regulations.

According to the Act, financial institutions are required to report single or aggregated transactions of more than $10,000.00. *Id.*; 31 C. F. R. § 103.22. Pursuant to the applicable statute and regulations, a bank must file a Currency Transaction Report ("CTR") with the Internal Revenue Service within 15 days following such a transaction; if it appears the transaction was structured to avoid the $10,000.00 reporting requirement, the bank must submit a Suspicious Activity Report ("SAR"). 31 U. S. C. § 5324(a); 12 C. F. R. 21.11. Pursuant to the applicable regulations, "[a] SAR, and any information that would reveal the existence of a SAR, is confidential." 12 C. F. R.

13

§ 21.11(k). A national bank or agent thereof is not permitted to disclose to third parties a SAR or information that would reveal its existence. *See* 12 C. F. R. § 21.11(i).

In this case, PSO contends the Bank failed to generate a required SAR for the Stones' transactions involving PSO's checks; it further contends the Bank had a duty to do so under the Act, and its failure to do so resulted in injury to PSO.[4] The Bank argues that this claim fails as a matter of law because there is no private right of action under the Act.

The Bank is correct that the Act and its implementing regulations do not create a private right of action; in fact, it is "well settled that the anti-money-laundering obligations of banks, as established by the Bank Secrecy Act, obligate banks to report certain customer activity to the government but do not create a private cause of action." *El Camino Resources, Ltd. v. Huntington Nat. Bank*, 722 F.Supp.2d 875, 923 (W.D.Mich.2010); *see also Nouri v. TCF Bank*, 2011 WL 836764, at * 6 (E. D. Mich. March 9, 2011) (unpublished opinion) (citing *AmSouth v. Dale*, 386 F.3d 763, 777 (6th Cir.2004)); *Armstrong v. American Pallet Leasing, Inc.*, 678 F.Supp. 2d 827, 874-875 (N.D. Iowa 2009); *Quinn v. United States,* 2003 WL 22133715, at *2 (W. D. Okla. July 10, 2003) (unpublished opinion) (citing *Martinez Colon v. Santander National Bank*, 4 F. Supp. 2d 53 (D.P.R.1998)).

Courts have repeatedly rejected negligence claims based on a bank's duty arising under the Act, concluding a bank's duty created by the Act is owed *only* to the government and not to private

---

[4]PSO does not explain how the purported failure to generate SARs allegedly contributed to the harm it suffered from the alleged presentation of fraudulent invoices by the Stones and A Plus. Although it contends the alleged absence of SARs prevented PSO from tracing the Stones' checking transactions, it does not explain how it could have obtained confidential SARs or similar information, as the federal regulations prohibit the disclosure of such information. Furthermore, PSO apparently otherwise obtained information to trace the transactions, as the Amended Complaint lists in detail the transactions which it contends reflect its payment for fraudulent invoices.

14

parties. "[B]ecause the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements." *In re Agape Litigation,* 681 F.Supp. 2d 352, 360-361 (E.D.N.Y. 2010). Finding the plaintiffs failed to allege the bank breached a cognizable legal duty on that basis, the court dismissed the negligence claims against the defendant bank. *Id.,* at 361 (citing *Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) (unpublished opinion)) (the Act did not create a private right of action and therefore did not provide a basis for imposing a duty of care upon the defendant bank). In fact, "courts have uniformly rejected" an argument that the Act creates a duty of a bank to private parties. *Armstrong,* 678 F. Supp. 2d at 874.

In *Marlin v. Moody Natl. Bank*, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (unpublished opinion), the court explained its reasons for rejecting the plaintiff's contention that the Act imposed upon a bank a duty to private parties. According to the court, a bank's "obligation under that statute is to the government rather than some remote victim," and, by the Act, "banks do not become guarantors of the integrity of the deals of their customers. It does not create a private right of action and, therefore, does not establish a standard of care." *Id.; see also James v. Heritage Valley Fed. Credit Union*, 197 F. App'x. 102, 106 (3d Cir.2006)(unpublished opinion), *cert. denied,* 550 U.S. 939 (2007).

PSO offers no argument or legal authority to support its contention that its negligence claim may be based on the theory that the Act imposed upon the Bank a duty to PSO or any other party having business dealings with the Stones and/or A Plus. As a matter of law, PSO has not, and cannot, state a plausible claim for relief on the basis of this contention. Accordingly, the Bank's motion to dismiss is granted.

15

Leave to amend:

As an alternative to dismissal, PSO asks the Court to grant it leave to file another amended complaint. Where a motion to dismiss is granted, "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brever v. Rockwell International Corp.*, 40 F. 3d 1119, 1131 (10th Cir. 1994) (citations omitted). Leave to amend is not automatic, however, and may be denied where an amendment would be futile; a court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997)(citing *AM Int'l, Inc. v. Graphic Management Assocs., Inc.*, 44 F.3d 572, 578 (7th Cir.1995) and *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989)).

In this case, it would be futile to allow PSO to amend to attempt to state a common law negligence claim against the Bank because, as discussed at length herein, the majority of courts have rejected such claims because a bank has no duty to a non-customer, even where the bank's customer engages in suspicious conduct. PSO offers no argument sufficient to persuade the Court that Oklahoma would depart from the majority view. Accordingly, PSO cannot state a plausible claim against the Bank, and amending in an attempt to do so would be futile. Nor can PSO base a negligence claim on a purported duty of the Bank to comply with the reporting requirements of the Bank Secrecy Act. Because the Act does not create a private right of action and does not create a duty owed to private parties, allowing leave to amend regarding this claim would also be futile. Accordingly, leave to amend is denied.

In its response brief, however, PSO argues that it has asserted an additional claim for relief against the Bank – it contends that it has alleged the Bank aided and abetted the Stones in committing fraud in connection with the allegedly false invoices submitted to PSO.

As the Bank correctly argues in its reply, its motion does not seek dismissal of such a claim because the Amended Complaint does not contain an aiding and abetting cause of action asserted against the Bank or any other defendant. In the Amended Complaint, each of the causes of action asserted identifies the defendant or defendants against whom it is asserted; the only cause of action asserted against the Bank is the Sixth Cause of Action, which contains PSO's allegations of negligence and gross negligence. The claims of fraud are asserted against the Stones and A Plus in the Second Cause of Action. PSO argues the Court should look beyond the labels PSO selected in the Amended Complaint and find that the allegations, in their entirety, support an aiding and abetting claim.

PSO's fraud allegations against the Stones and A Plus are based on the harm it allegedly suffered as a result of their submission of false or fraudulent invoices. However, PSO alleges no facts to support a contention that the Bank had reason to know the Stones had submitted false or fraudulent invoices when they submitted the PSO checks to the Bank. In its response brief, PSO speculates that the Bank employees knew the Stones were engaged in some form of wrongdoing because the Bank is located in a town of 7,000 people, and "it's hard *not* to know what everyone is up to." PSO's response, at p. 15 (emphasis in original). In addition, PSO argues that Mrs. Stone's mother formerly worked at the Bank and was employed there for many years, and suggests this supports PSO's belief that the Bank had reason to suspect the Stones. Allegations based on mere

17

suspicion or speculation are insufficient to satisfy the plausibility requirements of *Twombly. See Ashcroft,* __U.S. __, 129 S.Ct. 1937, 1951.

Furthermore, as the Bank argues in its reply, the Oklahoma Supreme Court has not recognized a civil cause of action based on aiding and abetting fraud. Even if it had done so, the allegations on which PSO relies in support of its contention that it has asserted such a claim are insufficient to state a claim for relief against the Bank on this theory. A person may be liable in a civil action for aiding and abetting only upon proof 1) that another person committed a wrong; 2) the aider and abettor knew of the existence of that wrong; and 3) the aider and abettor substantially assisted the wrongdoer in committing that wrong. *Adelphia Recovery Trust v. Bank of America, N. A.,* 624 F. Supp. 2d 292, 312 (S. D. N. Y. 2009) (citing *Landry v. Federal Deposit Ins. Corp.,* 486 F. 2d 139, 162-63 (3d Cir. 1973)). To satisfy the pleading requirements of Fed. R. Civ. P. 9(b)[5] and Fed. R. Civ. P. 12(b)(6), a plaintiff must "plead facts showing the existence of a fraud, defendant's knowledge of the fraud, and that the defendant provided substantial assistance to advance the fraud's commission." *Id.* (citing *Wight v. BankAmerica Corp.*, 219 F. 3d 79, 91 (2d Cir. 2000).

In this case, PSO alleges the fraud purportedly committed by the Stones and A Plus consisted of the submission to PSO of false invoices representing work that was never performed. There are no factual allegations that the Bank knew false invoices were being submitted; in fact, there are no allegations that the Bank was even aware the Stones and/or A Plus performed work for PSO until PSO had paid the allegedly false invoices and the Stones submitted PSO's checks for handling at the Bank. Contrary to PSO's argument, the Amended Complaint does not allege facts

---

[5]Rule 9(b) requires that fraud be pled with particularity, and the particularity requirement applies to allegations of aiding and abetting fraud. *Adelphia,* 624 F. Supp. 2d at 312.

sufficient to state a claim for relief against the Bank on a theory of aiding and abetting the alleged commission of fraud by the Stones, A Plus, or any other defendant.

PSO argues, however, that if the Court finds its purported aiding and abetting allegations insufficient, it should be granted leave to amend to assert an aiding and abetting claim against the Bank. PSO's request for leave to amend to assert a new claim is not properly presented in response to a motion to dismiss the *existing* claims. The Bank's motion sought dismissal only of the claims presented against it in the Sixth Cause of Action in the Amended Complaint, asserting negligence. The Court has granted that motion and concluded the deficiencies in the cause of action cannot be cured by amendment. Where a motion to dismiss is granted, leave to amend may be properly requested only for the purpose of curing the deficiencies raised in the motion to dismiss; thus, a plaintiff may not, in response to a Rule 12(b)(6) motion, obtain leave to amend to assert new claims. *See Ambrose Packaging, Inc. v. Flexsol Packaging Corp.*, 2004 WL 2075457, at * 3 (D. Kan. Sept. 16, 2004) (unpublished opinion). Instead, a plaintiff must comply with the requirements of Fed. R. Civ. P. 15(a) by separately filing a motion seeking leave to amend to assert a new claim.

Even if PSO's request had been properly asserted in response to the Bank's motion, however, the Court would not grant it. "Courts have been unwilling to grant leave to amend when a plaintiff seeks to add factual allegations or claims for relief at the end of discovery or after existing claims have been dismissed." *Snyder v. American Kennel Club*, 2009 WL 395161, at *3 (D. Kan. Feb. 18, 2009) (unpublished opinion) (citing *Pallottino v. City of Rio Rancho*, 31 F. 3d 1023, 1027 (10th Cir. 1994) and *Woolsey v. Marion Labs., Inc.,* 934 F. 2d 1452, 1462 (10th Cir. 1991)). Although leave to amend should be given freely, "this does not mean that it can go on indefinitely." *A. E. and R.R. v. Mitchell*, 724 F. 2d 864, 868 (10th Cir. 1983).

As discussed above, PSO's own allegations establish that it would be futile to amend to assert a claim against the Bank based on aiding and abetting the alleged fraudulent conduct of the Stones and A Plus. As the Bank argues, and PSO apparently agrees, Oklahoma has not expressly recognized a cause of action based on a bank's alleged aiding and abetting a bank customer's purported fraudulent conduct. Even if Oklahoma were to do so, the decisions in other jurisdictions recognizing such a cause of action reflect that PSO cannot plead the facts necessary to support the essential elements of that cause of action against the Bank in this case.

Conclusion:

For the foregoing reasons, the Bank's Motion to Dismiss [Doc. No. 55] is GRANTED in all respects. PSO's request for leave to amend its allegations against the Bank is DENIED. The case will proceed on PSO's claims against the remaining defendants. As a result of the dismissal, the Bank's separate motion for a protective order [Doc. No. 75] is MOOT.

IT IS SO ORDERED this 2nd day of August, 2011.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE